## MINCKS HOTEL CO. v. SEIDLITZ PAINT & VARNISH CO.

No. 23722. May 12, 1936.

Remington Rogers, for plaintiff in error.

Yancey, Spillers & Fist (by Donald Brown) and John C. Quilty, for defendant in error.

PHELPS, J. The Mincks Hotel Company was incorporated on July 23, 1927, and began the construction of the Mincks Hotel in Tulsa. At that time I. S. Mincks, the president, owned one-fourth of the capital stock and the remainder was owned by his wife, another married couple, and a business associate. At the time of the furnishing of the material involved in the present action I. S. Mincks owned two-thirds of the capital stock, and was president, treasurer, and a director of the Mincks Hotel Company during all of the transactions hereinafter described.

On October 10, 1927, approximately two and a half months after the Mincks Hotel Company was incorporated, that company leased the building and grounds to I. S. Mincks personally. The testimony does not reveal whether at that time the hotel was completed. The lease, however, contains the following language: "hotel as per plans and specifications being constructed", and "party of the second part agrees to place or have placed in the above hotel immediately upon its completion furniture—furnishings and fixtures. * * *" It therefore may be inferred that the hotel was not at that time completed.

On November 26, 1928, the Blue Willow Corporation was organized for the purpose of acquiring the assets and liabilities of I. S. Mincks, and he then assigned the lease to the Blue Willow Corporation. He was president of the Blue Willow Corporation, and its manager.

Neither the lease by the Mincks Hotel Company to I. S. Mincks nor the assignment thereof by I. S. Mincks to the Blue Willow Corporation was recorded, nor was any notice given the public, in any manner, that the hotel was not being operated by its originator, the Mincks Hotel Company. The same is true of a still later lease, executed by the Mincks Hotel Company to the Advance Operating Company.

From January to June, 1930, the plaintiff, Seidlitz Paint & Varnish Company, operating a store in Tulsa, furnished certain paint and varnish to the Mincks Hotel, upon orders from day to day by those in charge of the hotel. Mr. Mincks, president and majority stockholder of the Mincks Hotel Company, manager of the hotel, and president of the Blue Willow Corporation, had personal knowledge of the receipt of these supplies, and was on occasions in the hotel rooms where the paint was being applied when it was delivered. Most of the invoices from plaintiff were billed to "The Mincks Hotel Company", and a few to the "Mincks Hotel." During that particular period of time in which the paint and varnish were furnished, the Blue Willow Corporation was owner of the lease, and was running the hotel under the management of I. S. Mincks. As stated above, however, knowledge of this fact seems to have been restricted to those

in operation of the hotel, and it appears that neither the plaintiff nor the general public knew of it. The hotel auditor, who had served as such for all of the various parties and corporations who had handled the hotel in rapid succession, testified that many companies had been furnishing supplies under the impression that the hotel was being operated by the Mincks Hotel Company, and that he did not notify them to the contrary.

Shortly after June of 1930, the plaintiff began insisting upon payment of the account. Mr. Mincks then went to the plaintiff's store and there interviewed plaintiff's manager, and showed him a statement of his own financial condition, which included an item of 2/3 interest in the hotel, said interest being valued at $625,000. An examination of that statement discloses that it could not have been construed as a financial statement of the Mincks Hotel Company, but on the other hand it does not appear that Mincks informed plaintiff that the hotel was not being operated by the Mincks Hotel Company. Also, this conversation took place after the account sued on had already been incurred.

The plaintiff recovered a verdict and judgment against the Mincks Hotel Company, and that company appealed. There are several propositions advanced, the first of them being that "plaintiff could not recover from defendant on the common counts, because there was no express agency."

The evidence in this record on the question of express agency is rather limited. We do not proceed on the assumption that Mincks, merely because he was president of the corporation, had authority to contractually bind it. On the witness stand, plaintiff's attorney asked him who managed the Mincks Hotel Company, and he replied that it had no manager, that the directors managed it, and that he was a director. No activity or managerial functionings or acts of the remaining directors are shown in the record. Nevertheless, it is evident that the corporation was, and had to be, managed. It is not reasonable to believe that the board of directors was called into session for the ordering of one or several cans of paint. If this had been the case, the directors would have stayed in continuous session during the entire building and completion of the hotel. If the directors managed it, and he was a director, he was one of the managers.

Under the terms of the lease the lessee, Mincks, was to keep the building in repair and place furniture and fixtures therein to the value of $125,000, but it is not denied that the duty of the Mincks Hotel Company, and the task which it undertook, was to complete the hotel. That is the purpose for which it was formed. We can think of no reason for the use of paint and varnish in a new hotel, undergoing completion, other than a use directly connected with and entering into such completion. Though at the time the instant material was furnished the hotel was being operated by the Blue Willow Corporation, it appears that the material entered into and became a part of the structure of the hotel itself, a task admittedly undertaken by the Mincks Hotel Company. When Mincks personally became lessee, and later when he became president and manager of the subsequent lessee, the Blue Willow Corporation, he did not thereby cease being president and one of the managers of the Mincks Hotel Company. It is true that he testified that the hotel company had not had any general manager or agent, and had not done any business of any kind since it first leased the hotel to him. The jury was at liberty to accept or reject that part of his testimony, it being at variance with reasonable inferences from the other facts and circumstances in the case, even should we hold that such statement was other than the mere conclusion of the witness.

We therefore think that it is entirely unnecessary to discuss the subjects of ostensible agency and agency by estoppel, which have been argued at great length by the parties. Though all of the elements of agency by estoppel are involved in the case, under our view of the matter it is unnecessary to lengthen this opinion by discussion thereof. It is sufficient to observe that a recovery under either the express agency or agency by estoppel theory was warranted by the pleadings and evidence, and that the instructions of the trial court on the latter theory have been examined by us and found to be correct.

The judgment is affirmed.

OSBORN. V. C. J., and BUSBY. CORN. and GIBSON, JJ., concur.